Citation Nr: 1513874 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 10-00 197A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to service connection for the cause of the Veteran's death. 

2. Entitlement to Dependency and Indemnity Compensation (DIC) under the provisions of 38 U.S.C.A. § 1318. 

3. Entitlement to service connection for brain cancer, for accrued benefits purposes. 

4. Whether there was clear and unmistakable error (CUE) in an August 1995 rating decision that assigned a 50 percent disability rating for the Veteran's service-connected posttraumatic stress disorder (PTSD). 

5. Whether there was clear and unmistakable error (CUE) in a December 1997 rating decision as it pertains to the assignment of an effective date of April 4, 1997, for the award of a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

William Skowronski, Associate Counsel


INTRODUCTION

The Veteran had active duty service from March 1967 to March 1970. He died in February 2007. The appellant is his surviving spouse.

This case is before the Board of Veterans' Appeals (Board) on appeal from an August 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana and a March 2010 Administrative Review by the Director of Compensation and Pension Service. The August 2007 rating decision denied service connection for the cause of the Veteran's death, entitlement to DIC pursuant to 38 U.S.C.A. § 1318, and entitlement to accrued benefits. The March 2010 Administrative Review, in pertinent part, found the August 1995 and December 1997 rating decisions were not clearly and unmistakably erroneous for not granting a total schedular or TDIU rating for PTSD and for not assigning an effective date earlier than April 4, 1997 for the grant of a TDIU rating, respectively. The appellant had also initiated an appeal of the RO's finding that an April 1972 rating decision was not clearly unmistakably erroneous for assigning noncompensable disability evaluations for service-connected scars, but an April 2012 Board decision denied her appeal. Hence, that matter is not before the Board. The Board remanded the claims on appeal for additional development in June 2011 and April 2012. The case has been reassigned to the undersigned. Additional evidence, including a December 1993 psychological evaluation of the Veteran reportedly prepared in connection with a claim for Social Security Administration (SSA) benefits, was provided by the appellant and was received with a waiver of RO consideration in January 2015.

The issues of whether there was CUE in a December 1997 rating decision and entitlement to DIC under the provisions of 38 U.S.C.A. § 1318 are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. A claim for entitlement to service connection for brain cancer was pending at the time of the Veteran's death in February 2007.

2. The appellant's claim of entitlement to accrued benefits was received within one year of the Veteran's death.

3. Brain cancer, to include glioblastoma multiforme, was not manifested during service (to include within one year of the Veteran's last exposure to an herbicide agent in service); the preponderance of the evidence is against a finding that the Veteran's brain cancer was related to an event, injury, or disease in service.

4. The Veteran's death certificate lists the immediate cause of death as cardiorespiratory arrest due to (or as a consequence of) pulmonary edema, due to (or as a consequence of) intracranial neoplasm.

5. At the time of the Veteran's death, his service-connected disabilities were PTSD, rated 70 percent disabling, and shell fragment wound (SFW) scars, rated noncompensable; he had established entitlement to a TDIU rating effective April 4, 1997.

6. The competent evidence does not establish that a service-connected disability was either the principal or a contributory cause of the Veteran's death or that his death resulted from any disability incurred in or aggravated by service.

7. An unappealed August 1995 rating decision, in pertinent part, granted an increased, 50 percent rating for the Veteran's service-connected PTSD, effective January 1, 1995, and denied a rating in excess of 50 percent; the record, as it existed in August 1995, does not demonstrate that the correct facts, as they were known in August 1995, were not before the adjudicator, or that the law existing at the time was misapplied.


CONCLUSIONS OF LAW

1. For accrued benefits purposes, brain cancer, to include glioblastoma multiforme, was not incurred in or aggravated by active service, nor may it be presumed to have been incurred therein. 38 U.S.C.A. §§ 1110, 1116, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307(a)(6), 3.309 (2014).

2. Service connection for the cause of the Veteran's death is not warranted. 38 U.S.C.A. §§ 1310, 5107 (West 2014); 38 C.F.R. § 3.312 (2014).

3. The August 1995 rating decision, which granted a 50 percent rating for PTSD, is final and was not clearly and unmistakably erroneous. 38 U.S.C.A. §§ 5109A, 7105 (West 2014); 38 C.F.R. §§ 3.104, 3.105a, 3.156 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). 

Because a motion to revise or reverse a rating decision based on CUE is not a claim for VA benefits but rather a collateral attack of that decision, the notice and assistance provisions under the Veterans Claims Assistance Act of 2000 (VCAA) do not apply to the appellants claim alleging CUE in an August 1995 rating decision. See Livesay v. Principi, 15 Vet. App. 165, 178-179 (2001).

With regard to the issue of entitlement to service connection for brain cancer for accrued benefits purposes, the Board finds that VA has not completely satisfied its duty to notify. The record shows that the AOJ sent the appellant a notification letter in April 2007. That notice was timely. The letter notified the appellant that VA pays accrued benefits when a person dies before receiving a benefit to which he/she was entitled based on evidence in the file at the time of death. However, the letter did not specifically inform the appellant of the information needed to substantiate and complete the Veteran's claim of service connection for brain cancer or provide notice as to how VA assigns disability ratings and effective dates. 

The Board finds that the appellant has not been prejudiced by these deficiencies. The evidence of record shows that she has been pursuing her claim for accrued benefits for several years now. Over the years, she and her representative have been provided numerous documents (e.g., a rating decision, statement of the case (SOC), supplemental statement of the case (SSOC), the Board's remand in 2012) setting out the applicable law, summarizing the evidence, and/or discussing VA's reasons for denying the claim. She and her representative have also expressed an active understanding of the elements involved. Under the circumstances, it is the Board's conclusion that any defects in notice have been cured by the appellant's actual and/or constructive knowledge of the information and evidence necessary to substantiate her claim. Further, with respect to notice pertaining to ratings and/or effective dates, the Board notes that no questions with respect to those matters are currently before the Board on appeal. Indeed, as set forth below, the Board has determined that the appellant's claim must be denied. Consequently, no rating or effective date will be assigned as a matter of law. Under the circumstances, the Board finds that the purpose of the notice requirement has been satisfied. The fundamental fairness of the adjudication has not been affected, and no further corrective action is necessary.

Certain additional VCAA notice requirements may attach in the context of a claim for DIC benefits based on service connection for the cause of death. In Hupp v. Nicholson, 21 Vet. App. 342 (2007), the United States Court of Appeals for Veterans Claims (Court) held that proper VCAA notice for DIC claims must also include: (1) a statement of the conditions, if any, for which a Veteran was service-connected at the time of his death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected claim; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. 

In an April 2007 letter, the appellant was informed of the elements of a claim for service connection for the cause of the Veteran's death. She was provided Hupp compliant notice in September 2007, after the August 2007 rating decision was issued. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). VCAA notice should be given before an initial AOJ decision is issued on a claim. Pelegrini II, 18 Vet. App. at 119-120. While complete VCAA notice was provided after the initial adjudication of the claim, this timing deficiency was remedied by the issuance of VCAA notice followed by readjudication of the claim. Mayfield v. Nicholson, 444 F. 3d 1328 (Fed. Cir. 2006). The claim was readjudicated in a September 2009 statement of the case. Therefore, any timing deficiency has been remedied. The appellant has not alleged that notice in this case was less than adequate. See Goodwin v. Peake, 22 Vet. App. 128, 137 (2008) ("where a claim has been substantiated after the enactment of the VCAA, the appellant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream issues").

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate her claim. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159(c), (d). In cause of death cases, this "duty to assist" contemplates that VA will help a claimant obtain records relevant to her claim, whether or not the records are in Federal custody, and that VA will provide a medical examination and/or opinion when necessary to make a decision on a claim. 38 U.S.C.A. § 5103A(d) (West 2002); 38 C.F.R. § 3.159(c)(4).

Regarding VA's duty to assist, all appropriate development to obtain the Veteran's service treatment records (STRs), private, and VA treatment records pertinent to the issue of service connection for the cause of the Veteran's death has been completed. Pursuant to the Board's April 2012 remand, the RO requested the Veteran's SSA records; an October 2012 response indicated the medical records had been destroyed. In a December 2013 memorandum, a formal finding that his SSA records were unavailable was made. The Board notes there is no indication such records would be relevant to the issue of service connection for the cause of the Veteran's death because a February 1995 SSA disability determination that is associated with the record indicates the Veteran was found to be disabled in July 1992, years prior to when he was diagnosed with the brain cancer in January 2007 that was his underlying cause of death. The Board notes the adjudication of the claim for accrued benefits must be made based upon the evidence on file at the time of his death, which would include VA treatment records constructively of record. A review of the Veteran's VA treatment records show an autopsy was not performed after his death in February 2007. The Board notes the issue of whether there was CUE in a December 1997 rating decision is being remanded to secure outstanding treatment records related to his treatment for PTSD dating from between 1996 and 1997, and there is no indication such records would be pertinent to the Veteran's treatment for brain cancer or the appellant's claim for his cause of death. 

In connection with the claim of service connection for the cause of the Veteran's death, VA opinions were secured in December 2013 and January 2014. In April 2014 and December 2014 appellate briefs, the appellant's representative argued the December 2013 examiner's rationale for finding the Veteran's brain cancer was not related to his presumed exposure to herbicides in Vietnam was inadequate. He asserted the examiner based his opinion on the fact that brain cancer is not on VA's presumptive list of diseases associated with herbicide exposure. However, a review of the December 2013 VA examiner's opinion shows he based his opinion on the National Academy of Sciences' finding that there was inadequate or insufficient evidence to determine an association between intracranial glioblastoma multiforme neoplasms and exposure to Agent Orange, not the fact that brain cancer is not on the presumptive list of diseases associated with herbicide exposure, as alleged. The Board finds the examiner's reasoning adequate because his report makes clear that he evaluated the evidence and provided reasoning for his opinion that showed consideration of all pertinent and available medical evidence, including the findings of a medical study. The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide these matters, and that no further development of the evidentiary record is necessary. No additional pertinent evidence has been identified by the appellant as relevant to the issues adjudicated herein.

The Board is satisfied that evidentiary development is complete; VA's duties to notify and assist are met. The appellant is not prejudiced by the process in this matter. Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). Accordingly, the Board will address the merits of the claims.

Legal Criteria, Factual Background, and Analysis

Service connection for brain cancer for accrued benefits purposes

In Jones v. West, the United States Court of Appeals for the Federal Circuit (Federal Circuit) concluded that, "for a surviving spouse to be entitled to accrued benefits, the veteran must have had a claim pending at the time of his death for such benefits or else be entitled to them under an existing rating or decision." Jones, 136 F.3d 1296, 1299 (Fed. Cir. 1998).

The Federal Circuit noted that "a consequence of the derivative nature of the surviving spouse's entitlement to a veteran's accrued benefits claim is that, without the veteran having a claim pending at time of death, the surviving spouse has no claim upon which to derive his or her own application." Id. at 1300.

But unlike a claim for service connection for the cause of the Veteran's death, the adjudication of the claim for accrued benefits must be made based upon the evidence on file at the time of his death, including any VA medical records that must be deemed to have been constructively on file at that time. See 38 U.S.C.A. § 5121(a); 38 C.F.R. § 3.1000(a); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA records are deemed to be constructively in the possession of VA adjudicators and must be obtained).

Initially, the Board notes that the Veteran had a pending claim for entitlement to service connection for brain cancer at the time of his death. The appellant then filed a claim for accrued benefits for the above issue that was received in March 2007. 

Applicable law provides that service connection will be granted if it is shown that the Veteran suffers from a disability resulting from an injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury or disease in line of duty, in the active military, naval, or air service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Disabilities diagnosed after discharge will still be service connected if all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d); see also Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). 

In order to establish service connection on a direct basis, the record must contain: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Entitlement to service connection on the basis of a continuity of symptomatology after discharge under 38 C.F.R. § 3.303(b) is only available for the specific chronic diseases listed in 38 C.F.R. § 3.309(a), to include malignant tumors. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Certain chronic disabilities, such as cancer, if manifest to a degree of 10 percent or more within one year after separation from active duty, may be presumed to have been incurred in, or aggravated by, active service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

Veterans who, during active service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent [to include Agent Orange], unless there is affirmative evidence of non-exposure. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307. With regard to disabilities a veteran attributes to exposure to Agent Orange, the law provides that service connection may be presumed for certain diseases enumerated by statute and regulations that become manifest within a particular period, if any such period is prescribed.

In the case of a veteran who engaged in combat with the enemy in active service during a period of war, the VA shall accept as sufficient proof of service connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service. 38 U.S.C.A. § 1154(b); 38 C.F.R. § 3.304(d). 

The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Board has reviewed the evidence on file at the time of the Veteran's death, including any VA medical records that must be deemed to have been constructively on file at that time, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The Board will summarize the relevant evidence as appropriate and the analysis will focus on what the evidence shows, or fails to show, as to the claim.

At the outset, the Board notes that the Veteran did not allege his brain cancer was a result of participation in combat and the relaxed evidentiary standards of 38 U.S.C.A. § 1154(b) do not apply. 

It is not in dispute that the Veteran served in Vietnam, and was entitled to a presumption that he was exposed to herbicides therein. The regulations, however, do not provide presumptive service connection for brain cancer, including glioblastoma multiforme, based on exposure to Agent Orange. 38 C.F.R. §§ 3.307, 3.309. The VA Secretary has determined that there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See 59 Fed. Reg. 341-346 (1994); see also 61 Fed. Reg. 57586-57589 (1996). Accordingly, presumptive service connection for brain cancer, including glioblastoma multiforme, based on exposure to Agent Orange is not warranted. Notwithstanding, the Board will still consider whether the Veteran was entitled to service connection for brain cancer based on a direct basis. 

The Veteran's service treatment records show he was treated for superficial fragment wounds of the right thigh and both legs in January 1968 and a shrapnel wound of the chest in September 1968. His March 1970 separation examination report shows his head was clinically evaluated as normal.

A December 1994 VA discharge summary notes the Veteran reported two loss-of-consciousness incidents due to combat injuries in Vietnam in 1968. A November 1994 VA SPECT Brain Imaging examination report indicates the Veteran had a prior closed head injury and history of loss of consciousness. The scan showed bilateral diffuse frontal and temporal hypoperfusion. 

VA treatment records show the Veteran complained of headaches in October 2004. A CT scan was performed and showed the intracranial structures were essentially within normal limits, with incidental findings of tortuous and ectatic left vertebral artery.

VA treatment records indicate that the Veteran was diagnosed with glioblastoma multiforme in January 2007. A current disability was therefore established. 

The Board finds that the evidence of record does not support a finding of service connection for brain cancer, for accrued benefits purposes. As noted, glioblastoma multiforme was diagnosed in January 2007. Notably, while the November 1994 brain scan showed bilateral diffuse frontal and temporal hypoperfusion and the October 2004 scan showed some tortuosity of an intracranial vertebral artery as described, they did not show a brain tumor. The competent evidence does not show, and the Veteran did not assert, that his brain cancer was manifested to a compensable degree in service or in the first post-service year or that he had symptoms of brain cancer since service. Entitlement to service connection based on a continuation of symptomatology under 38 C.F.R. § 3.303(b) or on a presumptive basis for chronic disease under 38 C.F.R. § 3.309(a) is, therefore, not warranted. 

Moreover, the Veteran did not submit any medical or scientific evidence that showed an in-service injury, including his combat-related head injuries he reported in 1994, or exposure to Agent Orange, actually caused brain cancer. The Board has considered the Veteran's statement attributing his brain cancer to service, but the evidence of record does not demonstrate that the Veteran had the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation of brain cancer. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). Therefore, the Veteran was not competent to provide an opinion on the etiology of his brain cancer. See Jandreau v. Nicholson, 492 F. 3d 1372, 1377 (2007). In the absence of any persuasive and probative evidence that the Veteran's brain cancer was etiologically related to active service, service connection is not warranted and the claim must be denied. 

The preponderance of the evidence is against the claim based on direct and presumptive theories of service connection, and the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b).

Service connection for the cause of the Veteran's death

The appellant contends the Veteran's death was caused by his brain cancer, which, in turn, was caused by his exposure to Agent Orange in Vietnam. Alternatively, she asserts his service-connected PTSD and/or ischemic heart disease caused by his exposure to Agent Orange contributed to his death.

The Veteran's death certificate lists the immediate cause of death as cardiorespiratory arrest due to (or as a consequence of) pulmonary edema, due to (or as a consequence of) intracranial neoplasm.

Dependency and indemnity compensation may be awarded to a Veteran's surviving spouse from a service-connected or compensable disability under 38 U.S.C.A. § 1310 and 38 C.F.R. § 3.312. To establish service connection for the cause of a Veteran's death, the evidence must show that a disability incurred in or aggravated by service was either the principal, or primary cause of death, or that it was a contributory cause of death under 38 C.F.R. § 3.312(a). For a service-connected disability to be the principal cause of death, it must singly or with some other condition be the immediate or underlying cause, or be etiologically related. 38 C.F.R. § 3.312(b).
 
A contributory cause of death is defined as one inherently not related to the principal cause. 38 C.F.R. § 3.312(c). For a service-connected disability to constitute a contributory cause, it must be shown that it "contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death." Id. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection.
 
The Board must also determine whether the Veteran had a disability incurred in or aggravated by service that was either the principal, or primary cause of death, or that it was a contributory cause of death. In its review of the record, the Board must determine whether the evidence supports the claim or if it is in relative equipoise, with the appellant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

First, the Board will consider the question of whether the underlying condition which caused the Veteran's death, brain cancer, was incurred in or aggravated by military service. Next, the Board will consider whether the Veteran had ischemic heart disease that caused or contributed substantially or materially cause death. Finally, the Board will consider whether the Veteran's service-connected disabilities caused or contributed substantially or materially to cause death. 

The analysis of whether the Veteran's underlying cause of death, brain cancer, is entitled to service connection closely follows the analysis performed above with regard to the accrued benefits claim, except evidence received after the Veteran's death can be considered. 

As noted above, it is not in dispute that the Veteran served in Vietnam, and was entitled to a presumption that he was exposed to herbicides therein. The regulations, however, do not provide presumptive service connection for brain cancer, including glioblastoma multiforme, based on exposure to Agent Orange. 38 C.F.R. §§ 3.307, 3.309. Accordingly, presumptive service connection for brain cancer, including glioblastoma multiforme, based on exposure to Agent Orange is not warranted. Notwithstanding, the Board will still consider whether the Veteran was entitled to service connection for brain cancer based on a direct basis, considering the additional evidence received after his death. 

The Veteran's service treatment records show he was treated for superficial fragment wounds of the right thigh and both legs in January 1968 and a shrapnel wound of the chest in September 1968. His March 1970 separation examination report shows his head was clinically evaluated as normal.

A December 1994 VA discharge summary notes the Veteran reported two loss-of-consciousness incidents due to combat injuries in Vietnam in 1968. A November 1994 VA SPECT Brain Imaging examination report indicates the Veteran had a prior closed head injury and history of loss of consciousness. The scan showed bilateral diffuse frontal and temporal hypoperfusion. 

In her January 2010 substantive appeal, the appellant contended the Veteran's death might have been caused by Agent Orange exposure and asserted the full effects of such exposure are still unknown. 

In a December 2013 opinion, a VA examiner found it was not at least as likely as not that the Veteran's death-causing brain tumor was related to in-service exposure to herbicides. He reasoned a National Academy of Sciences Report, Veterans and Agent Orange: Update 2012, indicated there was inadequate or insufficient evidence to determine an association between intracranial glioblastoma multiforme neoplasms and exposure to Agent Orange. 

In a May 2014 appellate brief, the appellant's representative asserted the Board has previously granted service connection for brain cancer due to herbicide exposure in two instances by relying on favorable medical opinions. Information that could have been used to identify the specific decisions was not provided. The representative acknowledged prior Board decisions are not binding, but argued the favorable decisions provided at least some indication that there may be a nexus between Agent Orange exposure and glioblastoma. As explained in the duty to assist section, the representative also argued the December 2013 VA examiner's opinion was inadequate because, the representative asserted, he relied on the fact that brain cancer is not on the list of presumptive conditions associated with herbicide exposure as his sole reasoning.

The Board finds that the preponderance of the evidence is against entitlement to service connection for brain cancer. 

The competent evidence does not show, and the appellant does not assert, that the Veteran's brain cancer was manifested to a compensable degree in service or in the first post-service year. The post-service medical evidence does not indicate any findings of treatment for brain cancer for decades after service. It is not contended otherwise. Entitlement to service connection based on a continuation of symptomatology under 38 C.F.R. § 3.303(b) and on a presumptive basis for chronic disease under 38 C.F.R. § 3.309(a) is, therefore, not warranted. 

The competent medical evidence is against the claim of service connection. Weighing against the claim is the probative December 2013 VA examiner's opinion. The examiner expressed a familiarity with the record and provided a clear explanation of rationale. Contrary to as alleged by the Veteran's representative, the examiner did not base his opinion on the fact that brain cancer is not a disease VA associates with herbicide exposure. Rather, he relied on the findings of a medical study. There is no medical opinion to the contrary. The Board recognizes the representative's assertion that two prior Board decisions granted service connection for brain cancer due to herbicide exposure based on positive medical opinions, but as he acknowledged, Board decisions are not binding. Furthermore, the representative noted the decisions relied on positive medical opinions in those cases, but no such competent opinions linking the Veteran's presumed exposure to herbicides and his brain cancer exist in this case.

The Board has considered the appellant's statements attributing the Veteran's brain cancer to service, but the evidence of record does not demonstrate that the appellant has the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation with respect to brain cancer. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). Therefore, she is not competent to provide an opinion on the etiology of his brain cancer. See Jandreau, 492 F. 3d at 1377. In the absence of any persuasive and probative evidence that the Veteran's brain cancer was etiologically related to active service, service connection is not warranted and the claim must be denied. 

Diseases associated with exposure to Agent Orange include, among others, ischemic heart disease (including, but not limited to, acute, subacute, and old myocardial infarction; atherosclerotic cardiovascular disease including coronary artery disease [including coronary spasm] and coronary bypass surgery; and stable, unstable and Prinzmetal's angina). 38 C.F.R. § 3.309(e). Under 38 C.F.R. § 3.309(e), the term ischemic heart disease does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease. 38 C.F.R. § 3.309(e), Note 3.

Therefore, if the Veteran was shown to have been diagnosed with ischemic heart disease, presumptive service connection would be warranted. 

The Board finds that the evidence of record does not support a finding of service connection for ischemic heart disease. 

A review of the Veteran's service and post-service treatment records does not show he was diagnosed with ischemic heart disease. 

A January 2007 VA nursing note indicates a cardiovascular evaluation was within normal limits. The nurse noted the Veteran did not have chest pain, and his extremities were without edema. "CAD," which is a common abbreviation of coronary artery disease, is noted without explanation. 

In December 2013, a VA examiner opined that it was not at least as likely as not that the Veteran had underlying ischemic heart disease. The examiner reasoned the Veteran's service treatment records and VA treatment records did not show a diagnosis of ischemic heart disease. The examiner noted his post-service electrocardiogram (ECG) results and treatment records showing instances of irregular cardiac-related symptoms. The examiner did not note the January 2007 notation of CAD, but noted a February 2007 discharge summary drafted after the Veteran's death did not indicate a diagnosis of or treatment for ischemic heart disease, including CAD. 

In a June 2014 appellate brief, the appellant's representative seemed to argue the Veteran was not diagnosed with ischemic heart disease because his symptoms, presumably rather than clinical studies, were used to diagnose his complaints.

In the absence of a current diagnosed disability, service connection cannot be granted for such disability. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

The competent December 2013 examiner reviewed the Veteran's treatment records and found they did not show he had ischemic heart disease. No competent opinion to the contrary has been provided. The Board finds the January 2007 notation of CAD was a clerical error, as the nursed indicated a cardiac evaluation was within normal limits, and his treatment records from before and after the notation, during the Veteran's hospitalization prior to his death, did not indicate irregular cardiac findings. The preponderance of the evidence is therefore against a finding that the Veteran had ischemic heart disease that was a contributory cause of his death, and the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b). 

The appellant has not submitted any competent medical evidence showing that the Veteran had ischemic heart disease prior to his death. The Board has considered the her general assertion that the Veteran had ischemic heart disease. However, as a layperson, she is not competent to establish that he had ischemic heart disease by her own opinion, as diagnosing ischemic heart disease requires medical testing. See Jandreau, 492 F. 3d at 1377. 

At the time of the Veteran's death, his service-connected disabilities were PTSD, rated 70 percent disabling, and shell fragment wound (SFW) scars, rated noncompensable; he had established entitlement to a TDIU rating effective April 4, 1997.

There is no probative evidence suggesting a link between the Veteran's service-connected disabilities and his later diagnosis of brain cancer and resulting death.
In a January 2014 opinion, a VA examiner found it was not as likely as not that the Veteran's cause of death can be attributed to his PTSD. The examiner reasoned that PTSD is a chronic stress disorder that reduces the ability to cope with further stress and illness, but, except for self-inflicted harm, does not directly lead to death from a disease such as glioblastoma, which he noted was the primary cause of death. The examiner noted a prior Board decision denied entitlement to service connection for the cause of a veteran's death, despite him being diagnosed with PTSD and glioblastoma. He also reasoned a thorough review of the Veteran's claims file did not show evidence of life threatening or self-destructive behavior due to PTSD. He noted the Veteran's level of functioning was at least in the moderate range, with GAF scores between 51 and 60, in 2006.

The Board notes the Board decision cited by the examiner did in fact deny service connection for the cause of a veteran's death, despite him being diagnosed with PTSD and glioblastoma. However, as previously noted, prior Board decisions are not binding. Notably, the examiner seemed to cite the prior decision to support his opinion, but based his reasoning on the findings in the Veteran's treatment records. As such, the Board finds the examiner's opinion that the Veteran's PTSD did not contribute to his death to be highly probative. The VA opinion provider noted that he had reviewed the claims file and provided a medical opinion based on a well-reasoned rationale. 

The appellant did not submit any medical or scientific evidence that showed the Veteran's service-connected disabilities were a contributory cause of death.

Accordingly, the preponderance of the evidence is against a finding that the Veteran's service-connected disabilities were a contributory cause of his death, and the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b). 

The Board acknowledges the appellant's claims suggesting her husband's death was due to his service-connected disabilities; however, although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, determining whether PTSD and the Veteran's service connected shrapnel scars contributed to brain cancer, a complex disease process, or his resulting death falls outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d at 1377. For these reasons, the record does not support a finding that the Veteran's service-connected disabilities were related to the Veteran's death.

In summary, there is no competent and probative evidence of record that suggests the brain cancer that caused the Veteran's death is in any way related to his active duty service, including as due to exposure to herbicides. There is also no competent and probative evidence of record that suggests a service-connected disability or a disability that warranted service connection was a contributory cause of his death. In the absence of any probative evidence that a disability incurred in or aggravated by service was either the principal, or primary cause of death, or that it was a contributory cause of death, service connection for the cause of the Veteran's death is not warranted. 

The Board is very sympathetic to the appellant's loss of her husband, the Veteran, but, for the foregoing reasons the preponderance of the evidence is against the claim for service connection for the cause of the Veteran's death. There is no reasonable doubt to be resolved. 38 U.S.C.A. § 5107(b).

Clear and Unmistakable Error 

The appellant contends there was CUE in an August 1995 rating decision that granted an increased, 50 percent rating and denied a 70 percent (or higher) rating for PTSD.

Under 38 C.F.R. § 3.105(a), previous determinations that are final and binding will be accepted as correct in the absence of CUE. 

CUE is an administrative failure to apply the correct statutory and regulatory provisions to the correct and relevant facts. It is not mere misinterpretation of facts. Oppenheimer v. Derwinski, 1 Vet. App. 370, 372 (1991). It is a very specific and rare kind of error of fact or law that compels the conclusion, as to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Fugo v. Brown, 6 Vet. App. 40, 43 (1993). 

Where evidence establishes CUE, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating decision which constitutes a reversal of a prior decision on the grounds of CUE has the same effect as if the corrected decision had been made on the date of the reversed decision. 
38 C.F.R. §§ 3.104(a); 3.400(k). 

The Court of Appeals for Veterans Claims (Court) has propounded a three-pronged test to determine whether clear and unmistakable error is present in a prior determination. First, either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied. Second, the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made." Third, a determination that there was clear and unmistakable error must be based on the record and the law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242, 245 (1994) (quoting Russell v. Principi, 3 Vet. App. 310, 313-14 (1992)).

In January 1995, the Veteran filed an increased rating claim for his PTSD, noting he had received in-patient treatment for his PTSD between October 1994 and December 1994.

A December 1994 VA discharge summary indicates he was diagnosed with PTSD, dysthymia, and alcohol dependence in full remission. His symptoms were noted to include irritability, isolation, night terrors, nightmares, avoidance of war reminders, emotional estrangement from children, restricted affective range, sleep difficulties, an exaggerated startle reflex, hypervigilance, and experiencing a physiologic reaction to being startled. He had fleeting suicidal fantasies without attempt, intent, or plan. He also had episodic sadness with kind spells with retained libido and appetite. On examination, he was alert and oriented. His recall ability was poor. His abstraction on proverbs was good. He did get confused regarding the year at times. His affect was appropriate, but somewhat restricted. His speech, thought processes, and thought content were within normal limits. His mood was dysphoric. A GAF score of 45 was assigned. The note indicated that even though he made significant progress during his hospital stay, his PTSD symptoms were considered chronic and severe in nature. 

The August 1995 rating decision, in pertinent part, granted a temporary total rating from October 24, 1994 until January 1, 1995, and an increased, 50 percent rating from that date. A rating in excess of 50 percent was denied. The adjudicator found the symptomatology was productive of considerable impairment of working ability consistent with an evaluation of 50 percent and did not demonstrate severe impairment in the Veteran's ability to obtain or retain employment. The RO notified the Veteran of the decision and his appellate rights, and he did not file a notice of disagreement within one year of the rating decision. In addition, new and material evidence was not received within one year of the notification of the August 1995 rating decision. The decision is, therefore, final based on the evidence then of record. See 38 C.F.R. § 3.156. 

In April 1997, the Veteran submitted a November 1994 letter from his VA treatment providers to the SSA that noted the Veteran had become much more isolated and only left home to seek treatment at the hospital. The treatment providers noted he was "much less able to deal with people." He was also noted to have a learning disorder, neck problems, and perianal fistulas. The treatment providers opined that alone, "any one of the problems [the Veteran] experiences might not prevent him from working, but working together they are synergistic and create great problems for successful employment." 

In January 2015, the appellant submitted a December 1993 psychiatric evaluation report performed for an SSA disability determination. The examiner diagnosed depressive disorder NOS, PTSD, anxiety disorder not otherwise specified (NOS), and alcohol abuse. The examiner opined the evidence from the evaluation indicated that the Veteran was currently disabled due to his mental condition.

The relevant laws and regulations that were in effect at the time of the August 1995 rating decision are essentially the same as those in effect now. Under the law and regulations in effect at the time of the August 1995 rating decision, disability evaluations were determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1 (1994). If two ratings were potentially applicable, the higher rating was to be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating was to be assigned. 38 C.F.R. § 4.7 (1994). 

In 1995, PTSD was evaluated under Diagnostic Code 9411 as a psychoneurotic disorder. The rating criteria in effect at the time provided for a 70 percent disability rating where: the ability to establish and maintain effective or favorable relationships with people is severely impaired. The psychoneurotic symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment. A 100 percent rating was warranted for: The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic, symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment. 38 C.F.R. § 4.132, Diagnostic Code 9411 (1994).

38 C.F.R. § 4.130 provided, in part: repeated psychotic periods, without long remissions, may be expected to have a sustained effect upon employability until elapsed time in good remission and with good capacity for adjustment establishes the contrary. Id. (1994). 

In various statements, the Veteran's representative has argued the August 1995 rating decision was clearly und unmistakably erroneous because VA treatment records that would have affected the PTSD rating had not been obtained, citing Bell v. Derwinski, 2 Vet. App. 611 (1992) (holding that medical records concerning a claimant which are in VA's possession at the time VA adjudicators render a decision on a claim will be considered to be evidence which was in the record before the adjudicators at the time of the decision, regardless of whether such records were actually before the adjudicators at the time of the decision) and a May 1995 General Counsel opinion, VAOGCPREC 12-95 (holding an AOJ's failure to consider records which were in VA's possession at the time of the decision, although not actually in the record before the AOJ, may constitute clear and unmistakable error, if such failure affected the outcome of the claim), to support his contention. Specifically, the representative asserted the November 1994 letter the Veteran's VA treatment providers sent to SSA would have been contained in the Veteran's VA treatment records because it was written when he was hospitalized for PTSD and could have been part of his chart. The consideration of such a letter in the August 1995 rating decision, the representative argued, would have resulted in an increased rating. 

In her April 2014 substantive appeal, the appellant argued the August 1995 rating decision was clearly and unmistakable erroneous because the Veteran's symptomatology during the period under consideration warranted a 70 percent rating and because the adjudicator failed to consider the provisions of 38 C.F.R. § 4.130 (1994), which provided that "repeated psychotic periods, without long remissions, may be expected to have a sustained effect upon employability." 

The Board recognizes the Court's holding in Bell and the May 1995 General Counsel opinion, but finds the November 1994 letter from the Veteran's VA treatment providers to SSA was not in VA's possession and not a document that could reasonably be expected to be part of the record at the time of the August 1995 rating decision. The letter was addressed to the SSA and was clearly drafted for consideration in a pending SSA disability claim, not as a treatment note to document the Veteran's ongoing care. As the letter was generated for non-VA purposes, it was not in VA's possession, constructive or actual, until the Veteran submitted it in April 1997. As the Veteran did not submit the letter until April 1997, its existence cannot establish CUE in the August 1995 rating decision. The Board notes the December 1993 examination report also cannot be used to establish CUE in the August 1995 rating decision because it was not received until January 2015. 

Even if the Board were to find that VA had constructive notice of the November 1994 letter at the time of the August 1995 rating decision, the appellant has not shown how its existence would have "manifestly changed the outcome" of the rating decision, as required to establish CUE. While it is necessary to consider the complete medical history of the Veteran's condition to evaluate the level of disability and any changes in condition, the primary concern when rating a disability is the present level of disability. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991); Francisco v. Brown, 7 Vet. App. 55 (1994). The August 1995 rating decision assigned a 50 percent rating for PTSD based on the findings of the December 1994 VA discharge summary, which provided the more current objective findings. Notably, a temporary total rating was assigned for the Veteran's PTSD at the time the November 1994 letter was drafted.

The argument that the evidence warranted a higher evaluation under the rating criteria for PTSD in effect during the period under consideration is an argument that the facts were improperly weighed. Mere disagreement with how facts were evaluated is an inadequate basis under which to raise the claim of CUE. Luallen v. Brown, 8 Vet. App. 92, 95 (1995). Similarly, allegations that previous adjudications have improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. See 38 U.S.C.A. § 5109A; 38 C.F.R. § 3.105(a); Damrel, 6 Vet. App. at 246. 

The appellant argued the RO's failure to consider the provisions of 38 C.F.R. § 4.130 in the August 1995 rating decision was CUE. However, the provision applies to psychotic episodes, and the medical evidence, including the November 1994 letter to SSA and the December 1994 VA discharge summary, does not show the Veteran experienced psychotic episodes as a result of his PTSD during the period under consideration. As such, not applying the provision cannot establish CUE in the August 1995 rating decision.

Based on the foregoing, the Board finds the August 1995 rating decision did not contain CUE. As such, the Veteran's appeal is denied.


ORDER

Entitlement to service connection for brain cancer for the purpose of accrued benefits is denied. 

Service connection for the cause of the Veteran's death is denied.

The appeal to establish CUE in an August 1995 rating decision, which assigned a 50 percent disability rating for the Veteran's PTSD, is denied. 


REMAND

Regarding the issue of whether there was CUE in the December 1997 rating decision as it pertains to the assignment of an effective date of April 4, 1997, for the award of a TDIU rating, it appears the Veteran's complete VA treatment records from the period under consideration in that decision have not been associated with his claims file. A July 1997 VA examination report indicates he received mental health treatment at the Monroe, Louisiana Vet Center. Such treatment records have not been associated with the record. As records from this period not already associated with the claims folder could contain pertinent information, and VA records are constructively of record, they must be secured. 

The matter of entitlement to DIC under the provisions of 38 U.S.C.A. § 1318 is inextricably intertwined with the claim alleging CUE in the December 1997 rating decision, and consideration of that matter must be deferred pending resolution of the CUE claim. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all of the Veteran's VA treatment records from March 1996 through April 4, 1997 that have not been associated with the record, including records the Vet Center in Monroe, Louisiana. If any records sought are unavailable, the reason for their unavailability must be noted for the record. 

2. After undertaking any other development deemed appropriate, the AOJ should readjudicate the issues of whether there was CUE in the December 1997 rating decision as it pertains to the assignment of an effective date of April 4, 1997, for the award of a TDIU rating and entitlement to DIC under the provisions of 38 U.S.C.A. § 1318. If any benefits sought are not granted, the appellant and her representative should be provided with a supplemental statement of the case and afforded an opportunity to respond. Then return the case to the Board for further review if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court 

of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs